## HEALY, CHIEF OF POLICE, *v*. RATTA.

No. 731.   Argued April 4, 1934.—Decided April 30, 1934.

264

Mr. H. Thornton Lorimer, Assistant Attorney General of New Hampshire, for appellant.

Mr. Fred C. Demond argued the cause, and Mr. Jonathan Piper filed a brief, for appellee.

MR. JUSTICE STONE delivered the opinion of the Court.

This case comes here on appeal from a decree of the Court of Appeals for the First Circuit, affirming a decree of the District Court for New Hampshire, which enjoined appellant, the chief of police for the City of Manchester, from enforcing the " Hawkers and Peddlers Act," c. 102, New Hampshire Laws of 1931, as an infringement of the Fourteenth Amendment. An appeal taken directly to this Court from the district court, three judges sitting, was dismissed for want of jurisdiction here since, in the lower court, appellee had waived his prayer for temporary relief. 289 U.S. 701; see Smith v. Wilson, 273 U.S. 388, 391.

The Act, effective April 14, 1931, requires payment of an annual license tax or fee for every hawker or peddler, defined to be "any person, either principal or agent, who goes from town to town, or place to place in the same town, selling or bartering, or carrying for sale or barter, or exposing therefor any goods, wares or merchandise." The tax is $50.00 for a statewide license. Local licenses are obtainable at a rate graduated according to population. That for Manchester is stated to be $85.00 for each license. Violation of the Act is punishable by a fine of not more than $200.00. Appellee's chief ground of attack upon the statute, sustained by both the courts below, is that it denies the equal protection of the laws by excepting from its operation certain classes of hawkers and peddlers, in which appellee and his agents are not included.

The bill of complaint alleges that until the effective date of the Act, appellee, a resident of Massachusetts, was engaged in Manchester and elsewhere in New Hampshire in the distribution of vacuum cleaners through their sale and delivery to purchasers by traveling salesmen; that the business was conducted in such a manner as to subject the salesmen to the tax, which they were unwilling or unable to pay; and that their arrest and prosecution, which appellant threatens if they continue to sell without paying the tax, would destroy appellee's business. The value of his business and his loss on account of the enforcement of the Act are each alleged to be more than $3,000.00. Appellant's answer and motion to dismiss the cause, as not within the jurisdiction of the district court, admit the facts stated in the complaint, so far as now material, except that they deny the allegation that the matter in controversy exceeds $3,000, the jurisdictional amount.

On this issue a trial was had, in the course of which evidence was given to show the extent of appellee's busi-

ness in Manchester and elsewhere in New Hampshire and in adjoining states, and the profits derived from it in New Hampshire both before and after the enactment of the taxing statute. No interlocutory injunction was sought; and after the effective date of the statute appellee changed the method of doing his business in New Hampshire in a way to avoid the necessity of a license, sales being made by sample, with later delivery by shipping the merchandise directly to the purchaser from outside the state. The business was carried on in this manner in 1931 at a loss. It appeared that the total number of salesmen employed in conducting appellee's business in Manchester during 1931, when the statute was enacted, was six, and that in earlier years a larger number had been employed. During those years from twenty-two to twenty-seven salesmen were employed elsewhere in the state.

It is appellee's contention that the matter in controversy is either the tax which he would be required to pay annually in order to continue his business in New Hampshire, or his right to conduct the business there without payment of the tax, and that the value of each exceeds $3,000. He argues upon the evidence that the expenditure for payment of the tax which he would be obliged to bear in order to continue his business in Manchester is at least $350.00 per annum, and that the capitalized value of this expenditure would exceed $3,000.00.

The District Court concluded that as the tax which would be imposed for the conduct of appellee's business in Manchester would amount to at least $300.00 per annum, its capitalized value, which would exceed $3,000, satisfies the jurisdictional requirement. The Court of Appeals thought that the matter in controversy was appellee's right to do business throughout the state, which is valued at more than $3,000.00

It is conceded that the authority of appellant, as chief of police, to make arrests for violation of the statute is

restricted to the City of Manchester. The bill of complaint does not allege, nor does appellee assert, that appellant will cause the arrest of his salesmen or otherwise interfere with them or with his business outside the city. The controversy here is that defined by the pleadings, see *Smith* v. *Adams*, 130 U.S. 167, 175, and the matter in controversy does not embrace more than the right asserted to restrain appellant from compelling compliance with the statute in Manchester by criminal prosecutions. Appellee neither asks nor could he properly be awarded a decree in the present suit restraining enforcement of the law by police officers elsewhere, and the collateral effect of the decree, by virtue of *stare decisis,* upon other and distinct controversies may not be considered in ascertaining whether the jurisdictional amount is involved, even though their decision turns on the same question of law. *Lion Bonding Co.* v. *Karatz,* 262 U.S. 77, 85; *Colvin* v. *Jacksonville,* 158 U.S. 456; *New England Mortgage Co.* v. *Gay,* 145 U.S. 123; *Vicksburg, S. & P. R. Co.* v. *Smith,* 135 U.S. 195; *Gibson* v. *Shufeldt,* 122 U.S. 27; *Elgin v. Marshall,* 106 U.S. 578.

If the threatened action of appellant is not restrained, the consequence will be either the payment of the tax by appellee, or the suppression of his business in Manchester because of his failure to pay it. Hence we disregard evidence of injury to appellee's business outside the city and of the cost of licenses for doing it, and confine ourselves to the inquiry whether his right to do the business in Manchester or the tax which must be paid for doing the business there is the matter in controversy, and whether the record shows that its value does not exceed $3,000.00.

That the issue between the parties is the right of the state to collect the tax cannot be gainsaid. There is no question of the authority of a state to suppress the conduct of a business for the non-payment of an exaction lawfully imposed upon it, or of the appellant's authority

to suppress the business here, by threat of criminal prosecution of the salesmen, if this tax is valid. The dispute as to the lawfulness of the tax is the controversy which alone gives vitality to the litigation. Once that is resolved, no other issue survives for decision.

It has been said that it is the value of the " object of the suit " which determines the jurisdictional amount in the federal courts, *Mississippi & Missouri R. Co.* v. *Ward,* 2 Black 485; *Packard* v. *Banton,* 264 U.S. 140, 142. But this does not mean objects which are merely collateral or incidental to the determination of the issue raised by the pleadings. The statute itself does not speak of objects of the suit. It confers jurisdiction only if " the matter in controversy exceeds . . . the sum or value of $3,000.00." It has never been thought that the federal courts have jurisdiction of suits to restrain the collection of a property tax or other money exaction of less than the jurisdictional amount assailed as unconstitutional merely because the penalty for non-payment, which has not been incurred, exceeds that amount. *Atlantic Coast Line Ry. Co.* v. *Railroad Comm'n,* 281 Fed. 321. The tax, payment of which is demanded or resisted, is the matter in controversy, since payment of it would avoid the penalty and end the dispute. See *Ross* v. *Prentiss,* 3 How. 771, 772. Whether and in what manner the penalty for non-payment may be enforced in the event the tax is valid are but collateral and incidental to the determination whether payment may be exacted. Only when the suit is brought to restrain imposition of a penalty already accrued by reason of failure to comply with the statute or order assailed can the penalty be included as any part of the matter in controversy. See *McNeill* v. *Southern Ry. Co.,* 202 U.S. 543; *Kansas City Southern Ry. Co.* v. *Ogden Levee Dist.,* 15 F. (2d) 637; compare *Barry* v. *Edmunds,* 116 U.S. 550.

The case of a tax or fee exacted for the privilege of doing a particular business presents no different considerations. Where a challenged statute commands the suppression or restriction of a business without reference to the payment of any tax, the right to do the business, or the injury to it, is the matter in controversy. *Scott* v. *Donald,* 165 U.S. 107; see *Bitterman* v. *Louisville & Nashville R. Co.,* 207 U.S. 205; *Hunt* v. *New York Cotton Exchange,* 205 U.S. 322; *Gallardo* v. *Questell,* 29 F. (2d) 897.[1] But the possible suppression of the business here, through the prosecution of those who conduct it, is but the threatened consequence or penalty for non-payment of the challenged tax. It is true that where there is no method at law to test the legality of a tax without risk of incurring a penalty, the imminence of the penalty may involve such a threat of irreparable injury as to satisfy the requirements of equity jurisdiction. See *Matthews* v. *Rodgers,* 284 U.S. 521, 526. But the inability of a taxpayer to litigate the validity of a tax without risk of irreparable injury to his business, which is ground for invoking the equity powers of a federal court, affords no measure of the value of the matter in controversy. *Atlantic Coast Line Ry. Co.* v. *Railroad Comm'n, supra.* The disputed tax is the matter in controversy, and its value, not that of the penalty or loss which payment of the tax would avoid, determines the jurisdiction. See *Washington & Georgetown R. Co.* v. *District of Columbia,* 146 U.S. 227; compare *Elliott* v. *Empire Natural Gas Co.,* 4 F. (2d) 493.

Not only does the language of the statute point to this conclusion, but the policy clearly indicated by the successive acts of Congress regulating the jurisdiction of federal courts supports it. Compare *Davis* v. *Mills,* 99 Fed. 39, 40. From the beginning suits between citizens of different

---

[1] These and other authorities are discussed in 34 Col. L. Rev. 311.

states, or involving federal questions, could neither be brought in the federal courts nor removed to them, unless the value of the matter in controversy was more than a specified amount. Cases involving lesser amounts have been left to be dealt with exclusively by state courts, except that judgment of the highest court of a state adjudicating a federal right may be reviewed by this Court. Pursuant to this policy the jurisdiction of federal courts of first instance has been narrowed by successive acts of Congress, which have progressively increased the jurisdictional amount.[2] The policy of the statute calls for its strict construction. The power reserved to the states, under the Constitution, to provide for the determination of controversies in their courts may be restricted only by the action of Congress in conformity to the judiciary sections of the Constitution. See *Kline* v. *Burke Construction Co.,* 260 U.S. 226, 233–234. Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined. See *Matthews* v. *Rodgers, supra,* at 525; compare *Elgin* v. *Marshall,* 106 U.S. 578.

The contested license fees must be paid annually as a condition precedent to doing the business. But it does not follow that capitalization of the tax is the method of determining the value of the matter in controversy. The bill of complaint does not allege, nor can it be assumed, that the appellant will act to compel compliance with the statute by appellee in future years for which no tax is yet payable, or that the appellee will seek to continue his business in Manchester indefinitely in the future, or that

---

[2] The amount originally fixed by § 11 of the Judiciary Act of 1789 at $500, exclusive of costs, 1 Stat. 78, was increased to $2,000, exclusive of interest and costs by Act of March 3, 1887, 24 Stat. 552, and to $3,000, exclusive of interest and costs, by the Act of March 3, 1911, 36 Stat. 1091; see U.S.C.A. § 41 (1).

the taxing act will be continued on the statute books, unmodified either as to the amount of the tax or the features to which the appellee objects. These, or like considerations, have led to the conclusion that, in suits to enjoin the collection of a tax payable annually or the imposition of penalties in case it is not paid, the sum due or demanded is the matter in controversy and the amount of the tax, not its capitalized value, is the measure of the jurisdictional amount. *Washington & Georgetown R. Co.* v. *District of Columbia, supra; Holt* v. *Indiana Manufacturing Co.,* 176 U.S. 68, 72; *Citizens Bank* v. *Cannon,* 164 U.S. 319; see *Atlantic Coast Line* v. *Railroad Comm'n, supra; Vicksburg, S. & P. Ry. Co.* v. *Nattin,* 58 F. (2d) 979; cf. *Wright* v. *Mutual Insurance Co. of New York,* 19 F. (2d) 117; *Elliott* v. *Empire Natural Gas Co., supra.*

A different question is presented where the matter in controversy is the validity of a permanent exemption by contract from an annual property tax, *Berryman* v. *Whitman College,* 222 U.S. 334, 348; see *Riverside & A. Ry. Co.* v. *Riverside,* 118 Fed. 736; or the validity of an order of a state commission directing a railroad to construct and maintain an unremunerative spur track. *Western & Atlantic R. Co.* v. *Railroad Comm'n,* 261 U.S. 264, 267. There the value of the matter drawn into controversy, the contract providing permanent immunity from taxation, or the order to maintain a permanent structure for an unlimited time, is more than a limited number of the annual payments demanded. Compare *Glenwood Light & Water Co.* v. *Mutual Light, Heat & Power Co.,* 239 U.S. 121. In such a case the burden which rests on a defendant who challenges the plaintiff's allegation of the jurisdictional amount, see *Hunt* v. *New York Cotton Exchange,* 205 U.S. 322, 333, may well not be sustained by the mere showing that the annual payment is less than the jurisdictional amount.

Here the record shows affirmatively, see *Vance* v. *W. A. Vandercook Co. (No. 2)*, 170 U.S. 468, that the total amount of the tax demanded, or which may be demanded, within any time reasonably required to conclude the litigation, is less than the jurisdictional amount; that any action by appellant to compel compliance by appellee or his salesmen with the taxing act in future years is at most conjectural; and that the effect of any decree rendered in the present suit upon the tax for other years, or with respect to appellee's business outside the City of Manchester, is collateral to the present controversy. The decree will be reversed, with instructions to the district court to dismiss the cause for want of jurisdiction.

*Reversed.*