## CRATER LAKE NAT. PARK CO. v. OREGON LIQUOR CONTROL COMMISSION et al.

No. 40.

District Court, D. Oregon.

Feb. 20, 1939.

D. P. Price and Joe P. Price, both of Portland, Or., for complainant.

Austin F. Flegel, Jr., Philip A. Joss, and Arthur S. Vosburg, all of Portland, Or., for defendants.

Before HANEY, Circuit Judge, and FEE and McCOLLOCH, District Judges.

McCOLLOCH, District Judge:

In a case between the same parties and presenting substantially the same issues, we previously denied an interlocutory injunction on the ground that the bill of complaint and stipulated facts did not show that the necessary jurisdictional amount was in controversy. Crater Lake Nat. Park Co. v. Oregon Liquor Control Commission et al., D.C., 23 F.Supp. 316.

The same facts as set forth in that opinion are again before us, and in addition plaintiff has added the allegations that the defendant Oregon Liquor Commission is seeking to have the United States Attorney for Oregon prosecute plaintiff under the Federal Assimilative Crimes Act,[1] and under the pertinent provisions of the Act accepting cession by the State of Oregon of the Crater Lake area,[2] in the event that plaintiffs disregard the Oregon Liquor Control Act, Code Supp.Or.1935, § 15-1001 et seq., and assume to sell or authorize the sale of beer within Crater Lake Park, without first obtaining a license to do so from the Oregon Liquor Commission, and otherwise complying with the State's liquor laws. It is also alleged that the defendants threaten to interrupt any attempts to bring beer and other alcoholic beverages into Crater Lake Park for resale there, whether from points within or without the State of Oregon. It is alleged that plaintiff lost income of about $100 per day during the last summer season, because beer and wines were not available in the Park, on account of warnings issued by the State's liquor commission to wholesalers both within and without the State of Oregon not to sell alcoholic liquors to plaintiff.

Since rendering our former opinion, the Supreme Court has held that the regulatory features of the California Liquor Act are not applicable to Yosemite National Park. Collins et al. v. Yosemite Park & Curry Co., 304 U.S. 518, 58 S.Ct. 1009, 82 L.Ed. 1502. The acts of cession by California, acceptance by the United States, and the reservations and other provisions in the legislation, State and Federal, which created Yosemite National Park, are very similar to the legislation pertaining to Crater Lake National Park,[3] and it appears to us that the Supreme

---

[1] Cr.Code § 289, as amended by Act June 20, 1935, 18 U.S.C.A. § 468.

[2] 16 U.S.C.A. § 121 et seq., particularly sections 124 and 126.

[3] Sec. 60-1304, Oregon Code 1930; 16 U.S.C.A. §§ 124–134.

Court's decision in the Yosemite case is controlling of all questions presented in this case. Counsel for the Oregon Liquor Commission state, however, that in the Yosemite case the Supreme Court did not consider the legal effect of the Federal Assimilative Crimes Statute. While it is true that the Supreme Court's opinion does not refer to this statute, nor was the question presented by the briefs in that case, so counsel inform us, the fact remains that the Supreme Court has held on substantially similar facts and dealing with substantially similar legislation, that exclusive jurisdiction as to regulation of the liquor traffic within Yosemite Park is in the United States by virtue of the acts of cession and acceptance, and we deem that holding binding on us in the present case.

Whether plaintiff is entitled to an interlocutory injunction is another question. As basis for such injunction, as pointed out above, plaintiff states that the defendant liquor commission now takes the position that the Federal Assimilative Crimes Statute applies to the Crater Lake area and is urging the United States Attorney to enforce the regulatory features of the Oregon Liquor Control Act by prosecutions in the Federal Court of this District.

It seems obvious that this situation presents no ground for injunctive relief. Should the State's liquor commission be unsuccessful in persuading the United States Attorney to prosecute plaintiff, plaintiff and its sub-lessees will be wholly undisturbed in making such sales, because, as shown in our former opinion, and as reiterated on the argument of the present case, the Oregon Liquor Commission does not claim the right to enforce the statute which it administers, either by any direct regulatory action within the Park or by prosecution in the State courts. If, on the other hand, the United States Attorney for Oregon should conclude that the Supreme Court was, as contended by the State's liquor commission, not fully advised in formulating the Yosemite decision, and should he seek and obtain indictments by the Federal Grand Jury for the District of Oregon by way of enforcement of the Oregon Liquor Control Act, plaintiff and its sub-agents could then raise all proper legal questions in defense of such indictments.

Crater Lake lies jeweled at an elevation of about 7,000 feet in the Cascade Mountains, and plaintiff's hotel will not be opened, as is customary, until in June or July. By that time, should the State Liquor Commission continue in its present state of dubiety respecting the soundness of the Supreme Court's decision in the Yosemite case, and should the State's commission persist in its avowed purpose of interfering with the transportation into the Park of beer and wines for consumption therein, reconsideration of the necessity for injunctive relief may then be warranted. It is to be hoped, however, that final disposition of this case may have been made before then.[4]

Interlocutory injunction denied.

HANEY, Circuit Judge (dissenting).

A hundred years ago, it was announced that when an objection to jurisdiction "has been made, or may be made, in any cause, in an inferior or appellate court of the United States, it must be considered and decided, before any court can move one further step in the cause; as any movement is necessarily the exercise of jurisdiction." Rhode Island v. Massachusetts, 37 U.S. 657, 12 Pet. 657, 718, 9 L.Ed. 1233. That rule, not having been modified, is as effective today as it was then. KVOS, Inc., v. Associated Press, 299 U.S. 269, 278, 57 S. Ct. 197, 81 L.Ed. 183. Such a step has been taken here, for an interlocutory injunction has been denied on the merits without considering whether the court has power to do so. Believing that the bill fails to set forth facts showing our jurisdiction, I think we are precluded from making a decision on any other point.

We have no jurisdiction unless "the matter in controversy exceeds, exclusive of interest and costs, the sum or value of $3,000." 28 U.S.C.A. § 41. A general allegation that such amount is involved "is sufficient, unless the bill contains others which qualify or detract from it in such measure that when all are considered together it cannot fairly be said that jurisdiction appears on the face of the complaint, in which case the suit should be dismissed by the court sua sponte or upon the defendant's motion." KVOS, Inc., v. Associated Press, supra, page 277, 57 S.Ct. at page 200.

---

4 Generally, see a valuable recent note in 38 Columbia Law Review, 128, Title: "Enclaves: Problems Raised by Federal Jurisdiction within the States."

In all cases where regulation by a state is sought to be enjoined, the amount in controversy is the value of the right to be free of the challenged regulation, and the value of such right is the loss to complainant which would follow enforcement of the regulation. Kroger Grocery Co. v. Lutz, 299 U.S. 300, 301, 57 S.Ct. 215, 81 L. Ed. 251; McNutt v. General Motors etc. Corp., 298 U.S. 178, 181, 56 S.Ct. 780, 80 L.Ed. 1135; Cf. KVOS, Inc. v. Associated Press, 299 U.S. 269, 277, 57 S.Ct. 197, 81 L.Ed. 183.

Regulation may assume different forms. One form of regulation is by levying a tax. By that form the taxpayer does business as usual, and his profit therefrom is ordinarily reduced only by the amount he has to pay for the tax. By enforcement of the regulation his loss is only the amount of the tax, and penalty already accrued for nonpayment, which is "the value of the right to be free of the challenged regulation." Healy v. Ratta, 292 U.S. 263, 268, 54 S.Ct. 700, 78 L.Ed. 1248; Henneford v. Northern Pacific R. Co., 303 U.S. 17, 19, 58 S.Ct. 415, 82 L.Ed. 619.

Another form of regulation is by suppressing a business entirely, in which case the value of the right to be free of the regulation is the resulting loss of profit by not being able to carry on the business. Healy v. Ratta, supra, page 269, 54 S.Ct. page 700. It can be seen, however, that in such case, not only is complainant's profit destroyed, but possibly other things also may be lost, such as good will or fixtures which have no value for anything else.

Still another form of regulation is by restricting a complainant's business, such as by fixing a selling price of a commodity (Kroger Grocery Co. v. Lutz, 299 U.S. 300, 57 S.Ct. 215, 81 L.Ed. 251) or other restrictions of that nature. General Motors etc. Corp., supra. In such cases the value of the right to be free of the regulation can be described no better than by the words that such value is the loss to complainants resulting from compliance with the regulation. In such cases, complainant's profit may or may not be lessened, depending on the effect of the regulation on his business.

Still another form of regulation is compelling a complainant to furnish information, safety devices or other materials. In such cases, complainant's business continues as usual, his income is the same, but his profit may or may not be lessened by complying with the regulation. If it appears that the profit will be lessened by the expense of compliance, then such expense is the value of the right to be free of the regulation. Petroleum Exploration Co. v. Public Service Comm., 304 U.S. 209, 216, 58 S.Ct. 834, 82 L.Ed. 1294. However, it is conceivable that such an expense might lead to greater profit, in which event the value of the right to be free of the regulation would be nil.

The declared purpose of the Oregon Liquor Control Act is, in general, to regulate the manufacture, sale and disposal of alcoholic beverages. It, so far as is complained of, requires complainant to procure licenses and permits in order to sell beer within the Park. The expense of the licenses and permits is the value of the right to be free of the regulation. The amended bill contains the new allegations that defendants' threats of prosecution and confiscation have lessened sales of commodities in general by more than $100 a day, and that "the total amount lost" by reason thereof "at the present time exceeds the value of $3,000.00." But that loss is the consequence of a failure to procure the licenses and permits and is not the value of the right to be free of the regulation. Healy v. Ratta, supra, page 268, 269, 54 S.Ct. page 700; cf. McNutt v. General Motors etc. Corp., supra, page 181, 56 S.Ct. page 780. Such loss does not result from procuring the licenses and permits, which is the regulation, but from the failure to procure such licenses and permits. As before said, the value of the right to be free of the regulation is the complainant's loss, which is the expense of the licenses and permits, the amount of which is less than $3,000.

For these reasons I dissent from the holding of the majority opinion, and think that the bill should be dismissed on the ground that our jurisdiction is not alleged.