**DUNNING v. AGRICULTURAL PRORATE ADVISORY COMMISSION OF CALIFORNIA et al.**

No. 21603 S Civ.

District Court, N. D. California, S. D.

Feb. 28, 1941.

Carroll S. Bucher, of San Francisco, Cal. (Allan H. Fish, of San Francisco, Cal., of counsel), for plaintiff.

Earl Warren, Atty. Gen. of California, and Walter L. Bowers and W. R. Augustine, Deputies Atty. Gen. of California, for Agricultural Prorate Advisory Commission and members thereof.

Milton D. Sapiro, of San Francisco, Cal., for Program Committee of Prune Proration Zone No. 1, and members thereof, and R. P. Baker, zone agent.

Before STEPHENS, Circuit Judge, A. F. ST. SURE and WELSH, District Judges.

STEPHENS, Circuit Judge.

Plaintiff, a producer of prunes in the State of California, brought the instant action to restrain the enforcement of a prorate prune marketing program prescribed under the authority of the California Agricultural Prorate Act, Chap. 754, Cal. Stats.1933, as amended by St.Cal.1935, p. 2087. Six others joined with plaintiff Edward E. Dunning in bringing the action, but all excepting Dunning dismissed their actions in open court during the trial. As injunctive relief, temporary and permanent, against the enforcement of state action under a state statute is prayed, the case was tried to United States Circuit Judge Albert Lee Stephens and United States District Judges Adolphus F. St. Sure and Martin I. Welsh, sitting under the provisions of Section 266 of the Judicial Code, as amended, 28 U.S.C.A. § 380.

We need not outline the provisions of the Act or of the program in detail, since, as we shall more fully explain herein, we find the evidence insufficient to sustain plaintiff's allegation that the matter in controversy exceeded the sum of $3,000.

■ At the trial the plaintiff endeavored to prove the jurisdictional requirement as to amount of money involved by various methods. First, under the cost of compliance theory he showed that his 1940 crop of prunes will amount to approximately 300 tons. Under the prorate program he will be charged fees of $2.50 per ton upon 78% of his tonnage, or the total sum of $585; before the prorate program he sold his prunes without grading or sorting charges, and for the 1940 crop under the program he will be compelled to pay approximately $300 for sorting; and the cost of hauling his 1940 crop to the prorate depot is estimated at $270, totaling $1,155.

To this figure he adds losses sustained under operation of the prorate program for the past three years to bring the amount of his damages to $3,000. This is unavailing, for past losses cannot be used to build up the jurisdictional requirement in an action for an injunction to restrain enforcement of the statute.

■ Plaintiff next contends that the difference between the amount he will receive for his prunes under operation of the program and the amount he would receive without its operation justifies our taking jurisdiction. Let us see. Plaintiff's crop is 300 tons, of which 290 tons are estimated to be "standard prunes". Sixty per cent, or 348,000 pounds of these standard prunes are by the prorate program forced into a pool. The market value of prunes in the plaintiff's district is 1¾ cents per pound, bringing the value thereof to $6,090. We quote from plaintiff's brief, "However, under the prorate, assuming this quantity of prunes was actually pooled, plaintiff would receive for 38% of 580,000 pounds, or 222,000 pounds, a Federal non-recourse loan of two and one-quarter cents a pound, or a sum total of $4,950.00. For 22% of the 580,000 pounds, or 106,000 pounds, plaintiff would receive one and one-eighth cents a pound, or a sum total of $1,192.40. The grand total which plaintiff would receive from the prorate for the tonnage would amount to $6,142.40 * * *".

It should be noted that the $6,142.40 which the plaintiff would receive under the operation of the prorate program exceeds the $6,090 estimated value of his prunes forced into the pool. Out of this amount costs amounting to a little over $1,000 would have to be paid, but it is clear that plaintiff's loss on this theory would not even approximate the jurisdictional $3,000.

■ It is urged, however, that since plaintiff is threatened with an annually recurring prorate program which will involve various expenses, the current year's expenses may be capitalized in determining the amount in controversy, citing Packard v. Banton, 264 U.S. 140, 44 S.Ct. 257, 68 L.Ed. 596; and Western & Atlantic Railroad v. Railroad Commission, 261 U.S. 264, 43 S.Ct. 252, 67 L.Ed. 645, among other authorities.

The plaintiff in the Packard case, however, showed a loss of $960 per year for

each of four taxicabs operated by him, or an annual loss of $3,840. Nothing was said by the Court about capitalization, and it is not authority on that point.

In the Western & Atlantic Railroad case, supra, the plaintiff had been directed by a state order to establish and operate an industrial spur track. The installation of the track would cost $1,266.24, and the Supreme Court allowed the plaintiff to capitalize his annual costs on account of interest on the initial investment, depreciation, maintenance and operating expenses of the track in arriving at the conclusion that the jurisdictional amount was involved.

In Healy v. Ratta, 292 U.S. 263, 54 S. Ct. 700, 78 L.Ed. 1248, however, the Supreme Court distinguished the latter case, in discussing the problem of capitalizing recurring expenses to establish the amount in controversy. There the state statute required the payment of an annual license tax of every peddler. Plaintiff alleged in his complaint that his business was conducted in such a manner as to subject his salesmen to the tax, which they were unwilling or unable to pay, and that the enforcement of the statute would destroy plaintiff's business, valued at more than $3,000. The Court said (page 270 of 292 U.S., page 703 of 54 S.Ct., 78 L.Ed. 1248),

"The contested license fees must be paid annually as a condition precedent to doing the business. But it does not follow that capitalization of the tax is the method of determining the value of the matter in controversy. The bill of complaint does not allege, nor can it be assumed, that the appellant will act to compel compliance with the statute by appellee in future years for which no tax is yet payable, or that the appellee will seek to continue his business in Manchester indefinitely in the future, or that the taxing act will be continued on the statute books, unmodified either as to the amount of the tax or the features to which the appellee objects. * * *

"A different question is presented where the matter in controversy is the validity of a *permanent* exemption by contract from an annual property tax [citing cases] or the validity of an order of a state commission directing a railroad to construct and maintain an unremunerative spur track [citing Western & Atlantic Railroad case, supra]. There the value of the matter drawn into controversy, the contract providing *permanent* immunity from taxation, or the order to maintain a *permanent* structure for an unlimited time, is more than a limited number of the annual payments demanded". [Emphasis supplied.]

So in the instant case there is not present the requisite permanency of annual outlay. The program which plaintiff is objecting to is for the year 1940. Further, the extent of the proration and the fees to be paid must be established each year. The evidence shows that the method, manner and extent of proration have differed in each of the past three years, during which the program has been in effect. The instant case is analogous to the tax cases, wherein it is settled that the "total amount of the tax demanded, or which may be demanded, within any time reasonably required to conclude the litigation" is the value of the amount in controversy. See Healy v. Ratta, supra, 292 U.S. page 272, 54 S.Ct. page 704, 78 L.Ed. 1248. The greatest cost to plaintiff that he has shown is less than $1,200, and we do not feel justified in assuming in order to take jurisdiction of the case that three years will be "reasonably required to conclude the litigation".

■ Plaintiff advances the argument that this Court has jurisdiction of the case, regardless of the amount in controversy, by virtue of sections 41(8) or 41(23) of Title 28 U.S.C.A.

Subsection 23 provides that the United States District Court has jurisdiction of "All suits and proceedings arising under any law to protect trade and commerce against restraints and monopolies." and subsection 8 provides that the District Court has jurisdiction of "All suits and proceedings arising under any law regulating commerce".

These statutes do not cover the instant case as the action itself must be brought under a federal statute either regulating commerce or to protect commerce. See Adams v. Chicago Great Western Ry. Co., D.C., 210 F. 362.

■ True, plaintiff alleges that the prorate program constitutes a violation of the Sherman Act, but no pertinent facts are pleaded or have been proved. As said by the Supreme Court in Levering & Garrigues Co. v. Morrin, 289 U.S. 103, 105, 53 S.Ct. 549, 550, 77 L.Ed. 1062, " * * * Jurisdiction, as distinguished from merits, is wanting where the claim set forth in the pleading is plainly unsubstantial", and "the

396

federal question averred may be plainly unsubstantial either because obviously without merit, or 'because its unsoundness so clearly results from the previous decisions of this court as to foreclose the subject and leave no room for the inference that the questions sought to be raised can be the subject of controversy' ".

Plaintiff's entire argument before this Court has related to his claim that the Act and program are violative of the commerce clause of the Federal Constitution, art. 1, § 8, cl. 3. We hold that the claim that it violates the Sherman Act, 15 U.S.C.A. § 1 et seq., is too unsubstantial to confer jurisdiction on this Court under subsection 23.

The complaint having alleged that the amount in controversy exceeded $3,000, but the plaintiff having failed to prove that allegation, findings may be prepared, limited to that issue.

Dismissed.