Betty Chloe **RAMSEY** and Jewel Swindle, Plaintiffs,

v.

**MERCHANTS NATIONAL BANK OF FORT SMITH, ARKANSAS,** Trustee and **First National Bank of Fort Smith, Arkansas,** Guardian of the Estate of Alline B. Davis, An Incompetent (widow of C. C. Davis), Defendants.

No. 81–2122.

United States District Court, W. D. Arkansas, Fort Smith Division.

Nov. 24, 1981.

---

John H. Fitzhugh, Bryan & Fitzhugh, Fort Smith, Ark., for plaintiffs.

Gregory Smith, Pryor, Robinson, Taylor & Barry, Fort Smith, Ark., for defendant First National Bank.

P. H. Hardin, Hardin, Jesson & Dawson, Fort Smith, Ark., for defendant Merchants National Bank.

## MEMORANDUM OPINION

WATERS, Chief Judge.

In this case the plaintiffs, citizens and residents of California, and the daughters of decedent, C. C. Davis, filed suit against Merchants National Bank of Fort Smith, Arkansas, Trustee of an inter vivos trust created by decedent, and First National Bank of Fort Smith, Arkansas, guardian of the estate of Alline B. Davis, an incompetent and widow of C. C. Davis. The complaint alleges that both of the banks are citizens of the State of Arkansas, and this appears to be uncontroverted. The amount in controversy is alleged to be in excess of $2,000,000.00 and jurisdiction of this court is invoked under the provisions of 28 U.S.C. Sec. 1332.

The plaintiffs allege in their complaint that C. C. Davis entered into the trust agreement with Merchants National Bank, Trustee, on the 19th day of February, 1980, and that Mr. Davis died on May 25, 1981. It is alleged that the plaintiffs are the daughters and "his sole heirs at law", and that decedent left surviving him no other children and no descendants of deceased children. The complaint alleges that, at the time the trust agreement was entered into, Davis "because of senility and old age, was utterly unable to retain in memory without prompting the extent and condition of property to be disposed of, to comprehend to whom he was giving it and to realize the deserts and relations to him of those whom he excluded from his purported trust agreement".

It is alleged that the beneficiaries of the trust, Bill Bateman and his wife, Evelyn Bateman, stood in a confidential relationship to Davis, and that the trust agreement was executed as a result of such undue influence. According to the complaint, Evelyn Bateman was the guardian of the person of the wife of C. C. Davis and Bill Bateman had secured a power of attorney from decedent.

Allegations of the complaint as they apply to Alline Davis, decedent's second wife, are that she refused to permit her husband to visit with his daughters prior to the appointment of a guardian for her, and that she was in a confidential relationship with him and that the trust agreement was the result of her undue influence during their marriage and that she unduly influenced him to favor the beneficiaries of the trust, Bill and Evelyn Bateman.

The Complaint states that Alline Davis is named as a defendant because, as widow of decedent, she may claim some interest in the assets embraced in the trust. The complaint prays that the trust agreement be declared null and void and that the assets of the trust be conveyed to the plaintiffs in accordance with their rights as the only children of C. C. Davis.

First National Bank, guardian of the estate of Alline Davis, an incompetent, filed an answer to the complaint and a cross-complaint against Merchants National Bank. In its answer it admitted all of the allegations of the complaint with the exception that it denied the allegations of the complaint relative to the undue influence that the complaint alleges that she exercised upon her husband. In fact, it is alleged in the answer and cross-complaint

that at the time of execution of the trust agreement, Alline Davis was herself incompetent, having been adjudicated incompetent by the probate court of Sebastian County, Arkansas. It is further alleged in the answer and cross-complaint that the execution of the trust agreement substantially prejudices Alline Davis' rights as well as the rights of plaintiffs.

In its answer the guardian of the estate of Alline Davis specifically admitted the allegations of the complaint relative to the undue influence of Bill Bateman and Evelyn Bateman and specifically admitted that, at the time of the execution of the trust agreement, decedent was incompetent. In addition it is alleged, in behalf of Alline Davis, as follows:

"The execution of the trust agreement dated February 19, 1980, deprived Alline B. Davis of the benefits to which she was entitled under the last will and testament of C. C. Davis, deprived Alline B. Davis of her dower interest in the estate of C. C. Davis, and if allowed to stand will have substantial adverse tax consequences for the estate of C. C. Davis and the estate of Alline B. Davis. The estate of Alline B. Davis and the estate of C. C. Davis have been greatly prejudiced and damaged by reason of the inducement of C. C. Davis, an infeebled and incompetent person, to execute the trust agreement dated February 19, 1980, to the benefit of Bill Bateman and Evelyn Bateman.

By reason of the incapacity of C. C. Davis and the undue influence and abuse of confidential relationship by Bill Bateman and Evelyn Bateman and other persons acting on their behalf and in conspiracy with Bill Bateman and Evelyn Bateman, the purported trust agreement dated February 19, 1980, is wholly invalid and should be declared by this court to be null and void."

The prayer of the answer and cross-complaint is as follows:

"WHEREFORE, premises considered, the defendant First National Bank of Fort Smith, Arkansas, as guardian of the estate of Alline B. Davis, an incompetent, prays that the purported trust agreement executed by C. C. Davis on February 19, 1980, be declared by this court to be null and void."

Defendant Merchants National Bank filed a motion to dismiss, contending that the cause of action should be dismissed for a number of grounds enumerated in the motion and statement in support and the plaintiffs have responded, of course alleging that the matter should not be dismissed. After careful consideration of the pleadings, the motion, responses and briefs of the various parties, the court finds that the parties should be re-aligned, placing defendant, First National Bank, on the same side of the litigation as that of the plaintiffs. When this is done, there is not complete diversity of citizenship so as to sustain this court's jurisdiction under the provisions of 28 U.S.C. Sec. 1332, and, for this reason, the court finds that this matter should be dismissed.

In the landmark case of *Indianapolis v. Chase National Bank*, 314 U.S. 63, 62 S.Ct. 15, 86 L.Ed. 47 (1941), the United States Supreme Court stated:

"To sustain diversity jurisdiction there must exist an 'actual,' *Helm v. Zarecor*, 222 U.S. 32, 36 [32 S.Ct. 10, 11, 56 L.Ed. 77], 'substantial,' *Niles-Bement-Pond Co. v. Iron Moulders Union*, 254 U.S. 77, 81 [41 S.Ct. 39, 41, 65 L.Ed. 145], controversy between citizens of different states, all of whom on one side of the controversy are citizens of different states from all parties on the other side. *Strawbridge v. Curtiss* [7 U.S. 267], 3 Cranch 267 [2 L.Ed. 435]. Diversity jurisdiction cannot be conferred upon the federal courts by the parties' own determination of who are plaintiffs and who defendants. It is our duty, as it is that of the lower federal courts, to 'look beyond the pleadings and arrange the parties according to their sides in the dispute.' *Dawson v. Columbia Trust Co.*, 197 U.S. 178, 180 [25 S.Ct. 420, 421, 49 L.Ed. 713]. Litigation is the pursuit of practical ends, not a game of chess. Whether the necessary 'collision of interests,' *Dawson v. Columbia Trust Co., supra*, at 181 [25 S.Ct. at 422], exists,

is therefore not to be determined by mechanical rules. It must be ascertained from the 'principal purpose of the suit,' *East Tennessee, V. & G. R. v. Grayson,* 119 U.S. 240, 244 [7 S.Ct. 190, 192, 30 L.Ed. 382], and the 'primary and controlling matter in dispute,' *Merchants' Cotton Press Co. v. Insurance Co.,* 151 U.S. 368, 385 [14 S.Ct. 367, 372, 38 L.Ed. 195]. These familiar doctrines governing the alignment of parties for purposes of determining diversity of citizenship have consistently guided the lower federal courts and this Court."

In *Dryden v. Dryden,* 265 F.2d 870 (8th Cir. 1959), the court of appeals for the Eighth Circuit, in applying the doctrine laid down in *Indianapolis v. Chase National Bank,* supra, quoted with approval *Thomson v. Butler,* 136 F.2d 644 (8th Cir. 1943) as follows:

> " . . . For purposes of testing the jurisdiction of a federal court on the basis of diversity of citizenship, it is immaterial how the parties may have been designated in the pleadings, since the court must align them for jurisdictional purposes on the basis of their actual legal interests and the apparent results to them if the object sought to be accomplished by the litigation is successful."

■ Thus, it is clearly the duty of this court to align the parties for jurisdictional purposes "on the basis of their actual legal interests and the apparent result to them if the object sought to be accomplished by the litigation is successful." In this regard, it is the opinion of the court that the parties themselves have clearly set forth in their pleadings what their legal interests are and what results they desire. The plaintiffs allege that the inter vivos trust created by Mr. Davis is invalid because he was senile and because the beneficiaries, Bill Bateman and Evelyn Bateman, who stood in a confidential relationship to him, exercised undue influence on him. Plaintiffs pray that the trust agreement be declared to be null and void.

Likewise, defendant First National Bank, guardian of Alline Davis, an incompetent, claims that the trust is invalid for the reason that Bill Bateman and Evelyn Bateman exercised undue influence on the decedent. The incompetent, acting through her guardian, likewise contends that the trust agreement should be declared to be null and void.

Thus, it seems clear that what both the plaintiffs and the incompetent want is for the trust agreement to be declared invalid and for the assets of the trust to be distributed according to law. It is clear that this is what they want because that's what they say they want and what they ask for, in almost identical terms.

It is recognized that the complaint of the plaintiffs goes one step further and alleges that not only should the trust agreement be declared to be void because of the undue influence of the Batemans and the senility of the decedent, but for the additional reason that Alline Davis exercised undue influence on him. However, the court considers these allegations to be surplusage and not to indicate any collision between the interest of the plaintiffs and the interest of the incompetent. It makes little difference why the trust is declared to be invalid so long as both of the parties want it to be invalid, and this is clearly the case. The plaintiffs and the incompetent have both asked that the trust be declared void and the only differences in their allegations in respect to the invalidity of the trust agreement is that the incompetent says that it is invalid because of the senility of decedent and the undue influence of the Batemans, and the plaintiffs say that it is true that it is invalid for those reasons, but that it is also invalid because Alline Davis also exercised undue influence over him. That is a distinction without a difference, and the result to the plaintiffs and to the incompetent will be the same whether the trust agreement is declared to be invalid because of the undue influence of the Batemans; because of the senility of the decedent; or because of the undue influence of the incompetent. The end result will be the same. The trust will be declared to be invalid, and the assets of the trust will be distributed according to law. That is what every party to this lawsuit wants with the exception of defendant, Merchants National Bank, the trustee.

As the United States Supreme Court said in *Indianapolis,* supra, 314 U.S. at p. 76, 62 S.Ct. at 20:

"This is not a sacrifice of justice to technicality. For the question here is not whether Chase and Indianapolis Gas may pursue what they conceive to be just claims against the City, but whether they may pursue them in the federal courts in Indiana, rather than in its state courts. The fact that Chase prefers the adjudication of its claims by the federal court is certainly no reason why we should deny the plain facts of the controversy and yield to illusive artifices. Settled restrictions against bringing local disputes into the federal courts cannot thus be circumvented.

These requirements, however technical seeming, must be viewed in the perspective of the constitutional limitations upon the judicial power of the federal courts, and of the Judiciary Acts in defining the authority of the federal courts when they sit, in effect, as state courts. See *Madisonville Traction Co. v. Mining Co.,* 196 U.S. 239, 255 [25 S.Ct. 251, 257, 49 L.Ed. 462], and *Ex parte Schollenberger,* 96 U.S. 369, 377 [24 L.Ed. 853]. The dominant note in the successive enactments of Congress relating to diversity jurisdiction, is one of jealous restriction, of avoiding offense to state sensitiveness, and of relieving the federal courts of the overwhelming burden of 'business that intrinsically belongs to the state courts,' in order to keep them free for their distinctive federal business. See Friendly, *The Historic Basis of Diversity Jurisdiction,* 41 Har.L.Rev. 483, 510; *Shamrock Oil Corp. v. Sheets,* 313 U.S. 100, 108–09 [61 S.Ct. 868, 872, 85 L.Ed. 1214]; *Healy v. Ratta,* 292 U.S. 263. 270 [54 S.Ct. 700, 703, 78 L.Ed. 1248]. 'The policy of statute (conferring diversity jurisdiction upon the district courts) calls for its strict construction. The power reserved to the states, under the Constitution, to provide for the determination of controversies in their courts may be restricted only by the action of Congress in conformity to the judiciary sections of the Constitution.... Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined.' *Healy v. Ratta,* supra, at 270 [54 S.Ct. at 703]. In defining the boundaries of diversity jurisdiction, this court must be mindful of this guiding Congressional policy. See *Hepburn & Dundas v. Ellzey,* 2 Cranch 445 [2 L.Ed. 332]; *New Orleans v. Winter,* 1 Wheat. 91 [4 L.Ed. 44]. *Morris v. Gilmer,* 129 U.S. 315, 328–29 [9 S.Ct. 289, 293, 32 L.Ed. 690]; *Coal Company v. Blatchford,* 11 Wall. 172 [20 L.Ed. 179]; *Shamrock Oil Corp. v. Sheets,* 313 U.S. 100 [61 S.Ct. 868, 85 L.Ed. 1214]; and compare *Old Grant v. M'Kee,* 1 Pet. 248 [7 L.Ed. 131]; *Elgin v. Marshall,* 106 U.S. 578 [1 S.Ct. 484, 27 L.Ed. 249]; *Healy v. Ratta,* 292 U.S. 263 [54 S.Ct. 700, 78 L.Ed. 1248]; *McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178 [56 S.Ct. 780, 80 L.Ed. 1135]."

Based on the principles outlined by the cases cited above, the court finds that First National Bank of Fort Smith, Arkansas, guardian of the estate of Alline B. Davis, an incompetent, should be re-aligned and should be considered as a party plaintiff for purposes of determining the subject matter jurisdiction of this court. When this is done, there is not a complete diversity between the parties and this matter must be dismissed.

Because the court has determined that it does not have jurisdiction of this matter, it is not necessary for it to decide the other substantive issues raised by the motion to dismiss of First National Bank. If this matter is refiled in state court those issues can be raised and decided by that court as, in our opinion, they should be.

An order will be entered in compliance with this memorandum opinion, dismissing the complaint of the plaintiff and the cross-complaint of defendant, First National Bank.