### ELBERT v. LUMBERMEN'S MUT. CAS. CO.

Civ. A. 3548.

United States District Court
W. D. Louisiana, Shreveport Division.

Sept. 4, 1952.

300

John M. Madison, Whitfield Jack, Shreveport, La., for plaintiff.

Charles L. Mayer, Jackson, Mayer & Kennedy, Shreveport, La., for defendant.

DAWKINS, Chief Judge.

Plaintiff, a citizen of Louisiana, invoking the jurisdiction of this court solely upon the ground of diverse citizenship, sues defendant, a "corporate citizen of the State of Illinois", in tort, and for cause of action alleges:

"Petitioner shows that at all times herein mentioned the defendant had issued, and there was in full force and effect, a policy of public liability insurance issued by the defendant to S. W. Bowen, 147 Boulevard Street, Shreveport, Louisiana, by the terms of which the defendant insured and indemnified and agreed to hold harmless the said S. W. Bowen, the members of his household, including his wife, and others operating the below described automobile with his permission, as provided for in said policy, from all claims of judgments arising out of the negligent operation of one certain 1949 Chrysler Sedan automobile owned by the said S. W. Bowen, which policy is made a part hereof by reference.

"Petitioner shows that on or about February 21, 1951, petitioner was invited by Mrs. S. W. Bowen, wife of assured, to be her guest to take a ride with her in the aforesaid Chrysler automobile, Mrs. Bowen then and there operating the car with the permission of assured.

"That petitioner accepted said invitation; that said Mrs. S. W. Bowen took petitioner for a ride and after having completed the same, stopped her car across the street in front of the driveway of petitioner's home, being 234 Olive Street in the City of Shreveport, Parish of Caddo, Louisiana. Petitioner shows that the said Mrs. S. W. Bowen stopped the car to permit petitioner to alight therefrom. Accordingly, petitioner proceeded to get out of the car, stepped on the ground and proceeded to close the right front door of the car. However, before petitioner could get the door fully closed and her hand removed from the handle, the said Mrs. S. W. Bowen suddenly and without warning, started her car forward, catching petitioner's coat sleeve in the handle of the car, dragging her and throwing her violently to the ground

and injuring her as hereinafter set forth.

"The accident and resulting injuries were caused proximately by the negligence of assured's wife, aforesaid, in the following non-exclusive particulars:

"a. Starting the car forward without first ascertaining that petitioner was free and clear thereof.

"b. Starting the car forward while petitioner was outside thereof but in physical contact therewith.

"c. Operating the car in a careless and reckless manner, under the circumstances.

"Petitioner itemizes her injuries as follows:

"a. The large bone of her upper right leg was broken and crushed where it fits into the hip joint socket.

"b. Injuries of undetermined nature to the bones, muscles, nerves, blood vessels, tissues and cartilage of her

"1. Upper back.

"2. Lower back.

"3. Both hips.

"4. Both legs.

"c. Aggravation and worsening of a preexisting but quiescent, dormant, non-disabling and non-painful arthritis and dislocated disc.

"d. Bruises and contusions over entire body."

Her prayer is for judgment in the total sum of $51,590.50, which includes "loss of enjoyment and use of physical functions * * * pain and suffering * * * expenses of an attendant * * * medicine, drugs and special foods * * * hospital bills * * * doctor bills * * * nursing and attendant bills accrued". There is nothing alleged to show whether the maximum coverage of the policy is more or less than the total amount claimed.

Defendant has moved to dismiss the complaint, contending there is no diversity of citizenship between the real parties to the controversy as to whose fault or negligence caused the alleged injuries and consequent damages.

The sole basis for invoking the jurisdiction of the Federal court here is the Act No. 55 of Louisiana Legislature of 1930 (now Act No. 541 of 1950, LSA–R.S. 22:655), which reads as follows:

"No policy or contract of liability insurance shall be issued or delivered in this state, unless it contains provisions to the effect that the insolvency or bankruptcy of the insured, shall not release the insurer from the payment of damages for injuries sustained or loss occasioned during the existence of the policy, and any judgment which may be rendered against the insured for which the insurer is liable which shall have become executory, shall be deemed prima facie evidence of the insolvency of the insured, and an action may thereafter be maintained within the terms and limits of the policy by the injured person or his or her heirs against the insurer. The injured person or his or her heirs, at their option, shall have a right of direct action against the insurer within the terms and limits of the policy in the parish where the accident or injury occurred or in the parish where the insured has his domicile, and said action may be brought against the insurer alone or against both the insured and the insurer, jointly and in solido. This right of direct action shall exist whether the policy of insurance sued upon was written or delivered in the State of Louisiana or not and whether or not such policy contains a provision forbidding such direct action, provided the accident or injury occurred within the State of Louisiana. Nothing contained in this Section shall be construed to affect the provisions of the policy or contract if the same are not in violation of the laws of this state. It is the intent of this Section that any action brought hereunder shall be subject to all of the lawful conditions of the policy or contract and the defenses which could be urged by the insurer to a direct action brought by the insured, provided the terms and conditions of such

policy or contract are not in violation of the laws of this state."

As appears from the fourth article of the complaint quoted above, the policy sued upon was not one of general liability in favor of the public, or any person who might have a claim in tort against the insured growing out of the use of the automobile covered. Nor did the insurer undertake to defend any such action against its insured, but, according to the complaint, "by the terms of the policy" the defendant undertook to "indemnify and agreed to hold harmless the said" insured and all others covered by the policy "from the claims or charges arising out of the negligent operation of the automobile involved".

## Opinion.

■ This is one of a large number of similar suits filed in this District, which has doubled the work in the Western District within the past few years, all by citizens of Louisiana alleging that the controversy is between citizens of different states. Here, as in others, the insured are citizens of Louisiana the same as the plaintiffs. All of them present the question of whether the State Legislature can, by authorizing a direct action against the insurer alone, at the option of complainant, impose jurisdiction upon the Federal courts in a controversy which primarily and fundamentally is one between its own citizens. The cause of action or controversy in all suits in tort in this state arises exclusively from the provisions of Article 2315 of the LSA–Civil Code, which is also quoted in full:

"Every act whatever of man that causes damage to another, *obliges him by whose fault it happened to repair it*; the right of this action shall survive in case of death in favor of the children, including adopted children, or spouse of the deceased, or either of them, and in default of these in favor of the surviving father and mother or either of them, and in default of any of the above persons, then in favor of the surviving brothers and sisters, or either of them, for the space of one year from the death; provided that should the deceased leave a surviving spouse, to-

gether with minor children, the right of action shall accrue to both the surviving spouse and minor children; provided further, that the right of action shall accrue to the major children only in those cases where their (there) is no surviving spouse or minor child or children.

"If the above right of action exists in favor of an adopted person, such right of action shall survive in case of death in favor of the children or spouse of the deceased, or either of them, and in default of these in favor of the surviving adoptive parents, or either of them, and in default of any of the above persons, then in favor of the surviving children of the adoptive parents, or either of them, and in default of these in favor of the surviving father and mother of the adopted person, or either of them, and in default of these, then in favor of the surviving brothers and sisters of the adopted person, or either of them, for the space of one year from the death.

"The survivors above mentioned may also recover the damages sustained by them by the death of the parent or child or husband or wife or brothers or sisters or adoptive parent, or parents, or adopted person, as the case may be. (As amended by Acts 1932, No. 159)". (Emphasis by the writer.)

In express terms therefore, only those whose *fault* causes the injury can be made to repair it. But by no stretch of the imagination can the insurer or indemnitor be said to have had any part in the tortious acts alleged in this or any other case. His undertaking is purely a matter of contract with his insured.

The jurisdiction of this court in diversity cases is conferred by the Federal Constitution and Statute. Section 2 of Article III of the Constitution provides:

"The judicial Power shall extend to * * * *Controversies* * * * *between Citizens of different States* * * *"; and Subsection (a) of Section 1332 of Title 28 U.S.C. declares:

"The district court shall have original jurisdiction of all civil actions

*where the matter in controversy* * * *is between:*

"(1) *Citizens of different States".* (Emphasis by the writer.)

To say that the Legislature of a state can confer jurisdiction upon a Federal court in a controversy which otherwise obviously it does not have, would be to concede to that body a function belonging alone to the National Congress by the simple expedient of a legislative declaration that the plaintiff, in a tort action, may sue the insurer directly and alone, in total disregard of the valid agreement between the insured and the insurer that this should not be done, by using the accident of diverse citizenship between the complainant and the insurance company. The vast majority of insurance companies writing this kind of insurance in Louisiana are citizens of other states, and the statute otherwise provides that all provisions of the policy, other than the "no action" clause, shall be preserved and apply in any such direct action against the insurer. Liability insurance, except as to commercial operators, is not compulsory, and where the tort feasor has none, the injured person has no alternative but to sue his fellow citizen in the State court.

In City of Indianapolis v. Chase National Bank, 314 U.S. 63, 62 S.Ct. 15, 18, 86 L. Ed. 47, the Bank, a citizen of New York, sued the Indianapolis Gas Company, the Citizens' Gas Company and the City of Indianapolis, all citizens of Indiana. The question involved was the validity of a lease by Indianapolis Gas Company to Citizens' Gas Company, insofar as the rights of the City, assignee, were concerned, since it had ultimately acquired the gas properties. It was found that inasmuch as the Indianapolis Gas Company, a citizen of the same state as the other two defendants, had to be aligned on the side of the plaintiff Bank, there was no jurisdiction in the Federal Court. The language used in emphasizing the necessity for determining the real controversy involved and the positions of the opposing parties to that controversy, it is believed has equal and forceful application to the present case. The court first found that the lease "is the

'primary and controlling matter in dispute'. The rest is window-dressing designed to satisfy the requirements of diversity jurisdiction".

That court had previously denied certiorari, City of Indianapolis v. Chase Nat. Bank, 305 U.S. 600, 59 S.Ct. 77, 83 L.Ed. 381, when the Court of Appeals, City of New York v. Citizens Gas Co. of Indianapolis, 7 Cir., 96 F.2d 363 had reversed the District Court in dismissing the case for lack of jurisdiction. When it went back, after trial on the merits, the District Court rendered judgment against Indianapolis Gas Company alone, but the Court of Appeals, Chase Nat. Bank v. Citizens Gas Co. of Indianapolis, 7 Cir., 113 F.2d 217, again reversed and held the other two, the Citizens' Company and the City, liable, along with the Indianapolis Company, for the interest on the bonds which the Bank was endeavoring to collect.

After stating the pleadings and issues requiring the alignment of Indianapolis Gas Company on the side of the Bank and against the other two defendants, the court first stated, in referring to its former refusal of certiorari, that "of course, this Court by its denial of certiorari when the case was here the first time *could not confer the jurisdiction which Congress has denied*" [314 U.S. 63, 62 S.Ct. 19] (emphasis by the writer).

In dealing with the necessity for diversity on the real issue or controversy, the court said:

"To sustain diversity jurisdiction there must exist an 'actual', Helm v. Zarecor, 222 U.S. 32, 36, 32 S.Ct. 10, 11, 56 L.Ed. 77, 'substantial', Niles-Bement-Pond Co. v. Iron Moulders' Union, 254 U.S. 77, 81, 41 S.Ct. 39, 41, 65 L.Ed. 145, controversy between citizens of different states, all of whom on one side of the controversy are citizens of different states from all parties on the other side. Strawbridge v. Curtiss, 3 Cranch 267, 2 L.Ed. 435. Diversity jurisdiction cannot be conferred upon the federal courts by the parties' own determination of who are plaintiffs and who defendants. It is our duty, as it is that of the lower fed-

eral courts, to 'look beyond the pleadings, and arrange the parties according to their sides in the dispute'. [City of] Dawson v. Columbia Trust Co., 197 U.S. 178, 180, 25 S.Ct. 420, 421, 49 L.Ed. 713. Litigation is the pursuit of practical ends, not a game of chess. Whether the necessary 'collision of interests', City of Dawson v. Columbia Trust Co., supra, 197 U.S. at page 181, 25 S.Ct. [420] at page 421, 49 L.Ed. 713, exists, is therefore not to be determined by mechanical rules. It must be ascertained from the 'principal purpose of the suit', East Tennessee, V. & G. R. v. Grayson, 119 U.S. 240, 244, 7 S.Ct. 190, 192, 30 L.Ed. 382, and the 'primary and controlling matter in dispute', Merchants' Cotton-Press & Storage Co. v. Insurance Co., 151 U.S. 368, 385, 14 S.Ct. 367, 373, 38 L.Ed. 195".

In holding that the actual controversy required the alignment of Indianapolis Gas Company with the Bank, the court further stated:

"This is not a sacrifice of justice to technicality. For the question here is not whether Chase and Indianapolis Gas may pursue what they conceive to be just claims against the City, but whether they may pursue them in the federal courts in Indiana, rather than in its state courts. The fact that Chase prefers the adjudication of its claims by the federal court is certainly no reason why we should deny the plain facts of the controversy and yield to illusive artifices. Settled restrictions against bringing local disputes into the federal courts cannot thus be circumvented.

"These requirements, however technical seeming, must be viewed in the perspective of the constitutional limitations upon the judicial power of the federal courts, and of the Judiciary Acts in defining the authority of the federal courts when they sit, in effect, as state courts. See Madisonville Traction Co. v. St. Bernard Mining Co., 196 U.S. 239, 255, 25 S.Ct. 251, 257, 49 L.Ed. 462 and Ex parte Schollenberger, 96 U.S. 369, 377, 24 L.Ed. 853.

The dominant note in the successive enactments of Congress relating to diversity jurisdiction is one of jealous restriction, of avoiding offense to state sensitiveness, *and of relieving the federal courts of the overwhelming burden of 'business that intrinsically belongs to the state courts in order to keep them free for their distinctive federal business.* See Friendly, The Historic Basis of Diversity Jurisdiction, 41 Harv.L.Rev. 483, 510; Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108, 109, 61 S.Ct. 868, 872, 85 L.Ed. 1214; Healy v. Ratta, 292 U.S. 263 [267], 270, 54 S.Ct. 700, 703, 78 L.Ed. 1248. 'The policy of the statute (conferring diversity jurisdiction upon the district courts) calls for its strict construction. The power reserved to the states, under the Constitution, to provide for the determination of controversies in their courts, may be restricted only by the action of Congress in conformity to the judiciary sections of the Constitution. * * * Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined.' Healy v. Ratta, supra, 292 U.S. at page 270, 54 S.Ct. [700] at page 703, 78 L.Ed. 1248. In defining the boundaries of diversity jurisdiction, this Court must be mindful of this guiding Congressional policy. See Hepburn & Dundas v. Ellzey, 2 Cranch 445, 2 L.Ed. 332; New Orleans v. Winder, [Winter] 1 Wheat. 91, 4 L.Ed. 44; Morris v. Gilmer, 129 U.S. 315, 328, 329, 9 S.Ct. 289, 293, 32 L.Ed. 690; Coal Company v. Blatchford, 11 Wall. 172, 20 L.Ed. 179; Shamrock Oil Corp. v. Sheets, 313 U.S. 100, 61 S.Ct. 868, 85 L.Ed. 1214; and compare Old Grant v. M'Kee, 1 Pet. 248, 7 L.Ed. 131; Town of Elgin v. Marshall, 106 U.S. 578, 1 S.Ct. 484, 27 L.Ed. 249; Healy v. Ratta, 292 U.S. 263, 54 S.Ct. 700, 78 L.Ed. 1248; McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 56 S.Ct. 780, 80

L.Ed. 1135." (Emphasis by the writer.)

In the present case there is no separate controversy between the plaintiff and the insurance company as to its liability within the amount of its policy, once that liability on the part of the insured has been established. Until that is done, the cause of action created by Article 2315 of the LSA–Civil Code, in favor of the plaintiff, growing out of the fault of the insured constitute the "primary and controlling matters in dispute". It is true that the Court of Appeals in this Circuit, in Fisher v. Home Indemnity Co., 5 Cir., 198 F.2d 218, held that the Act 55 of 1930, insofar as the insurer is concerned, deals with a substantial right in making it alone subject to a direct action without the presence of its insured in the case; but that was because the Act seeks to deprive the insurer of a property right under its written contract, valid where made, in violation of the Federal Constitution, and not because either that statute or Article 2315 has made it a party, within the meaning of the Federal Diversity Laws, and the only controversy involved here is whether its insured was guilty of negligence which proximately caused the damage, a matter which the insured and insurer expressly agreed should be first determined between the former and third persons claiming the right to sue in tort. See also Lake v. Texas News Co., 5 Cir., 51 F.2d 862; Haenni v. Craven, D.C., 56 F.2d 261; Cothran v. Hackel, D.C., 56 F.2d 263; and Behling v. Rivers, D.C., 74 F.Supp. 350. See especially State Farm Mutual Automobile Ins. Co. v. Hugee, 4 Cir., 115 F.2d 298, 132 A.L.R. 188; Maryland Casualty Co. v. Boyle Construction Co., Inc., 4 Cir., 123 F.2d 558; Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826.

Among the cases cited by the plaintiff to sustain jurisdiction in this and the companion case of Nelson v. Clyde T. Gasperson, No. 3232 on the docket of this court, and also relied on rather heavily by the Court of Appeals for this Circuit in New Amsterdam Casualty Co. v. Soileau, 167 F.2d 767, 6 A.L.R.2d 128, is that of Merchants Mutual Automobile Liability Insurance Co. v. Smart, 267 U.S. 126, 45 S.Ct. 320, 69 L.Ed. 538. The syllabus of that case is quoted as follows:

"A state law (N.Y.Laws 1918, c. 182) required that any policy issued by an insurance corporation, in the future, to indemnify the owner of a motor vehicle against liability to persons injured through negligence in its operation, shall provide that the insolvency or bankruptcy of the insured shall not release the company from payment of damages for an injury sustained during the life of the policy, *and that, in case execution against the insured in an action brought by a person so injured shall be returned unsatisfied because of such insolvency or bankruptcy, the injured person may maintain an action against the company on the policy for the amount of the judgment not exceeding the amount of the policy.*

"Held: (1) That the regulation is reasonable, and within the police power; it cannot be said to deprive the Insurance Company of property without due process of law. * * *" (Emphasis by the writer.)

It thus appears that the statute of New York there involved, unlike the present Louisiana law, required that the controversy between the injured person and the alleged tort feasor be determined before the injured person could sue the insurer. The primary controversy between those persons there had been decided and no longer remained an issue. The only question left was the obligation of the insurer to indemnify or protect the insured, which the State law declared should inure to the benefit of the injured person. Nothing was left to the insurer as a defense except the matters which it pleaded and these did not require the presence of the insured as a party. It is well to note also that the case had been filed in the State Court after judgment against the tort feasor was affirmed by the State Supreme Court and the matter went to the United States Supreme Court under Section 237 of the Judicial Code. The court found that "the regula-

tion is reasonable, and within the police power; it cannot be said to deprive the Insurance Company of property without due process of law". The New York statute was substantially the same as Act No. 253 of 1918 before it was amended to permit a direct action against the insurer by Act No. 55 of 1930. On the other hand, as stated above, the Court of Appeals in this Circuit, in Fisher v. Home Indemnity Co., supra, has held that the Louisiana direct action statute, which attempts to nullify stipulations in policies valid where made, by providing that the injured person, at his option, may sue the insurer directly and alone, does violate due process and the prohibition of the Federal Constitution against depriving persons of their property arbitrarily.

In discussing conditions arising from the increasing menace to life, limb and property from high-powered motor vehicles (which is now much worse than in 1924 when the decision was rendered), Chief Justice Taft said:

"It is well settled that the business of insurance is of such a peculiar character, affects so many people, and is so intimately connected with the common good that the state creating insurance corporations and giving them authority to engage in that business may, without transcending the limits of legislative power, regulate their affairs, so far, at least, as to prevent them from committing wrongs or injustice in the exercise of their corporate functions. Northwestern [Nat.] Life Insurance Company v. Riggs, 203 U.S. 243, 254, 27 S.Ct. 126, 51 L.Ed. 168; Whitfield v. Aetna Life Insurance Company, 205 U.S. 489, 27 S.Ct. 578, 51 L.Ed. 895; German Alliance Insurance Company v. Kansas, 233 U.S. 389, 412, et seq. 34 S.Ct. 612, 58 L.Ed. 1011; La Tourette v. McMaster, 248 U.S. 465, 467, 39 S. Ct. 160, 63 L.Ed. 362; National Union Fire Insurance Company v. Wanberg, 260 U.S. 71, 73, 43 S.Ct. 32, 67 L.Ed. 136. Such regulation would seem to be peculiarly applicable to that form of insurance which has come into very wide use of late years, that of indemnifying the owners of vehicles against losses due to the negligence of themselves or their servants in their operation and use. The agencies for the promotion of comfort and speed in the streets are so many and present such possibility of accident and injury to members of the public that the owners have recourse to insurance to relieve them from the risk of heavy recoveries they run in intrusting these more or less dangerous instruments to the care of their agents. *Having in mind the sense of immunity of the owner protected by the insurance and the possible danger of a less degree of care due to that immunity*, it would seem to be a reasonable provision by the state in the interest of the public, whose lives and limbs are exposed, to require that the owner in the contract indemnifying him against any recovery from him should stipulate with the insurance company that the indemnity by which he saves himself should certainly inure to the benefit of the person who thereafter is injured. Section 109 does not go quite so far. It provides that the *subrogation* shall take place only when the insured proves insolvent or bankrupt, and leaves the injured person to pursue his judgment against the insured if solvent without reliance on the policy.

"Another reason for the legislation is suggested in the opinion of the Appellate Division of the Supreme Court of New York (Roth v. National Automobile Mutual Casualty Company, 202 App.Div. 667, 674, 195 N.Y.S. 865), to wit, that it was enacted on the recommendation of state superintendent of insurance *to make impossible a practice of some companies to collude with the insured after an injury foreshadowing heavy damages had occurred, and to secure an adjudication of the insured in bankruptcy, whereby recovery on the policy could be defeated, because the bankrupt had sustained no loss.*

"Whatever the especial occasion for the enactment, it is clear that the exercise of the police power in passing it was reasonable and cannot be said to deprive the insurance company of property without due process of law. It is to be remembered that the assumption of liability by the insurance company under section 109 is entirely voluntary. It need not engage in such insurance if it chooses not to do so." (Emphasis by the writer.)

If the court can take notice, as it did there, of the possibilities of collusion and fraud between the insurance company and its insured, no reason can be seen why the other side of the picture should not be recognized. This court had occasion a few months ago to try a case in which the alleged tort feasor (driver of a borrowed automobile) was the husband of one of the victims, a son-in-law and brother-in-law to others, and the wife of the insured owner of the car was an injured passenger in the vehicle also. All signed statements shortly after the accident, the effect of which had been to practically eliminate any negligence on the part of the driver. All of the passengers sued the insurer alone, but the driver, although injured, did not join therein for the reason that it was his alleged negligence upon which the complainants relied to recover. The defendant pleaded his failure to cooperate required as a condition of the policy, and it was only after the court had admonished him to tell the truth that he finally gave testimony in line with the statement which he made immediately after the accident. All of the others contradicted their former signed statements completely. The insurance company had no source for gaining information about the accident other than from the driver and the plaintiffs, passengers in the car. It would seem, therefore, that the danger of collusion between the insured and the injured persons is equally present and perhaps greater than between the insured and the insurer. If there is full coverage, or the prospect of collecting from the tort feasor is not encouraging, the situation constitutes an open invitation to him to aid the claimants in mulcting the insurance company in consideration of their leaving him out of the case. I believe this matter requires a common sense consideration rather than a theoretical treatment which ignores the realities involved.

As to the cases cited as having been decided earlier by the writer, it is sufficient to say that, as frankly stated in Bayard v. Traders & Gen. Ins. Co., D.C., 99 F.Supp. 343, and Bish et ux. v. The Employers' Liability Assurance Corp., Ltd., D.C., 102 F.Supp. 343, after seeing the consequence of these former decisions and being convinced of the errors committed, along with the injustice of the situation and the deluge of litigation which fell upon this court, the matter was reconsidered and subsequent cases have been decided in accordance with what is believed to be correct principles of law. This judge has been substantially sustained in some of the changed views expressed in subsequent cases by the Court of Appeals for this Circuit in Fisher v. Home Indemnity Co., supra.

In New Amsterdam Casualty Co. v. Soileau, 5 Cir., 167 F.2d 767, 6 A.L.R.2d 128, the court cited and relied upon the Merchants Mutual Automobile Liability Ins. Co. v. Smart, supra, which, for the reasons stated above, it is believed can clearly be distinguished from both the Soileau case and the present one in that the original and true controversy between citizens of the same state had been settled by judgment of the State Court, leaving only the issue of the insurance company's liability under the terms of its policy. The fact that certiorari was denied did not mean that the Supreme Court approved the Soileau case, as is clearly disclosed by what happened in Indianapolis v. Chase National Bank, supra.

The case of City of New Orleans v. Whitney, 11 S.Ct. 428, 34 L.Ed. 1102, cited in the Soileau case is reported in 138 U.S. 595 under the title of New Orleans v. Gaines' Administrator, and the reverse of that title. That was a case involving the rents and revenues of real property and stemming from the implied warranty which the Civil Code imposes upon all vendors

when not expressly waived. In addition, there were express subrogations to support the action of the complainant. The court quoted from a former decision of the same matter in which it had been said as follows:

"'As between the city and its grantee, the former, by reason of its guaranty of title, is really the principal debtor, and bound to protect the grantee as a principal is bound to protect his surety. Therefore the grantee is entitled to such remedies as a surety hath; *and when fixed by judgment, if not before*, may file a bill against his grantor to protect him.'" (Emphasis by the writer.)

It is believed there was little analogy between that case and the Soileau case. Of course, there had not been in the Soileau case, nor has there been here, any express subrogation or reduction to judgment of the claim. In fact, it arises, if at all, solely from the court's interpretation of the statute as having the effect of a legal subrogation in favor of the injured person of the rights of the insured against his insurer. It cannot be seen how such a subrogation could be created of a part only of those rights, the suing of the insurer alone, without imposing also the obligation to first liquidate the claim with the insured. Just as in Merchants Mutual Automobile Liability Ins. Co. v. Smart, supra, the claim in Gaines had been established against the obligor.

American Surety Co. v. Lewis State Bank, 5 Cir., 58 F.2d 559, is not at all similar to the present case. There the nonresident surety, who sued to be reimbursed, had paid its bond and taken a formal subrogation from its principal, the State. The court upheld the jurisdiction in an action by the surety against the Bank, based upon its negligence. The remaining cases of the Fifth Circuit seem to be distinguishable for similar reasons.

For the reasons indicated, the motion to dismiss should be sustained.

Proper decree should be presented.