FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| PEOPLE OF THE STATE OF CALIFORNIA, acting by and through Los Angeles County Counsel Dawyn R. Harrison, | No. 24-1972 D.C. No. 2:23-cv-08570-SPG-PD |
| *Plaintiff - Appellee*, | |
| v. | ORDER |
| EXPRESS SCRIPTS, INC.; ESI MAIL PHARMACY SERVICE, INC.; EXPRESS SCRIPTS PHARMACY, INC.; OPTUMRX, INC., | |
| *Defendants - Appellants*, | |
| and | |
| EXPRESS SCRIPTS ADMINISTRATORS, LLC, MEDCO HEALTH SOLUTIONS, INC., OPTUMINSIGHT, INC., OPTUMINSIGHT LIFE SCIENCES, INC., | |
| *Defendants*. | |

Appeal from the United States District Court
for the Central District of California
Sherilyn Peace Garnett, District Judge, Presiding

Argued and Submitted March 4, 2025
Pasadena, California

Filed June 2, 2025

Before: Mary H. Murguia, Chief Judge, and Gabriel P.
Sanchez and Holly A. Thomas, Circuit Judges.

## SUMMARY[*]

### Stay Pending Appeal

In an appeal from the district court's order remanding a removed action to state court, the panel affirmed the district court's denial of defendants' motion to stay the remand order pending appeal.

Defendants removed the action to federal court under the federal officer removal statute. The district court granted plaintiff's motion to remand and denied defendants' stay motion. Declining to extend the logic of *Coinbase, Inc. v. Bielski*, 599 U.S. 736 (2023), which held that interlocutory appeals of denials of motions to compel arbitration result in automatic stays of district court litigation, the panel clarified that in this Circuit, the discretionary stay factors outlined in

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

*Nken v. Holder*, 556 U.S. 418 (2009), still control district courts and motions panels reviewing motions to stay litigation in the federal officer removal context. The panel disagreed with the Fourth Circuit and agreed with other Circuits. Applying the *Nken* factors, the panel held that the district court did not abuse its discretion in denying a stay.

## COUNSEL

Louis M. Bograd (argued), Elizabeth Smith, and Linda Singer, Motley Rice LLC, Washington, D.C., for Plaintiff-Appellee.

Christopher Michel (argued), Jonathan G. Cooper, and Michael J. Lyle, Quinn Emanuel Urquhart & Sullivan LLP, Washington, D.C.; Kiel Ireland and Sage V. Heuvel, Quinn Emanuel Urquhart & Sullivan LLP, Los Angeles, California; Charles B. Straut II, Quinn Emanuel Urquhart & Sullivan LLP, San Francisco, California; Omar Morquecho and Kimberly K. Chemerinsky, Alexander Akerman, Alston & Bird LLP, Los Angeles, California; for Defendants-Appellants.

# ORDER

MURGUIA, Chief Circuit Judge:

Since the Supreme Court decided, in *Coinbase, Inc. v. Bielski*, 599 U.S. 736 (2023), that interlocutory appeals of denials of motions to compel arbitration result in automatic stays of district court litigation, some uncertainty has arisen as to whether that holding applies in other contexts. Defendants here argue that *Coinbase*'s logic should extend to the federal officer removal context and ask this Court to issue an automatic stay of the district court's order remanding this case to state court "before deciding the merits of this appeal."[1]  We accept Defendants' call to address this issue expeditiously and separately from the merits of their appeal.   Today we clarify that in this Circuit, the discretionary stay factors outlined in *Nken v. Holder*, 556 U.S. 418, 434 (2009) still control district courts and motions

---

[1] Defendants concede in their briefing that a motions panel of this Circuit in a similar federal officer removal case immediately prior to Defendants' appeal denied a motion to stay litigation pending appeal and cited to *Nken v. Holder*.  *See California v. CaremarkPCS Health LLC*, Nos. 23-55597, 23-55599 (9th Cir. Aug. 17, 2023) (order denying motion to stay lower court proceedings).  Accordingly, after the district court denied Defendants' motion to stay litigation pending appeal, Defendants did not file a separate application for a stay pending appeal in this Circuit.  Instead, they asked this panel to "address this recurring issue."  We do so in this order affirming the district court's denial of stay and will issue our disposition on the merits of whether Defendants' removal pursuant to the federal officer removal statute was proper.

panels reviewing motions to stay litigation in the federal officer removal context.[2]

## I.

This case involves a lawsuit brought originally in state court by the Los Angeles County Counsel against pharmaceutical-entity defendants Express Scripts, Inc.; ESI Mail Pharmacy Service, Inc.; Express Scripts Pharmacy, Inc.; and OptumRx, Inc. ("Defendants"). The People of the State of California acting by and through Los Angeles County Counsel ("Plaintiff" or "the People") allege Defendants should be held liable under California's public nuisance statute for contributing to the public nuisance of the opioid epidemic through their prescription opioid business practices. Defendants removed this case to federal court under the federal officer removal statute on the theory that their business involves contracts with the U.S. Department of Defense, Department of Veterans Affairs, and Office of

---

[2] All other circuits where this question has been raised, besides the Fourth Circuit, appear to have reached the same conclusion. *See Gov't of P.R. v. Express Scripts*, 119 F.4th 174, 184 n.3 (1st Cir. 2024); *Cnty. of Westchester v. Express Scripts, Inc.*, No. 24-1639 (2d Cir. Sept. 6, 2024) (order denying motion to stay) ("[T]he request to stay is DENIED because the Appellants are not entitled to an automatic stay pending appeal under *Coinbase*."); *Georgia v. Clark*, No. 23-13368, 2023 U.S. App. LEXIS 34018, at *2 (11th Cir. Dec. 21, 2023) ("*Coinbase* was limited to arbitration proceedings, which are not at issue here."); *see also Plaquemines Par. v. Chevron United States, Inc.*, 84 F.4th 362, 373–78 (5th Cir. 2023) (applying the *Nken* factors in considering whether to grant the plaintiffs' motion to lift and vacate the district court's stay order pending appeal of its remand order in a federal officer removal case). The Fourth Circuit appears to be the first and only circuit in the country to have extended *Coinbase*'s logic to the federal officer removal context. *City of Martinsville, Virginia v. Express Scripts, Inc.*, 128 F.4th 265 (4th Cir. 2025).

Personnel Management to fill prescriptions for health plan members, including opioid medications.  The federal officer removal statute permits a person "acting under" a federal officer to remove claims "for or relating to" the work for the federal officer.  28 U.S.C § 1442(a)(1).  Plaintiff moved to remand and simultaneously amended its Complaint to include a disclaimer expressly limiting the scope of its claims to "Defendants' conduct in the non-federal market."

The district court granted the People's motion to remand, noting that the "explicit disclaimer" in the Amended Complaint eviscerated Defendants' ground for removal. Defendants then appealed that decision pursuant to 28 U.S.C § 1447(d), which provides for interlocutory appeals of remand orders based on lack of subject-matter jurisdiction under the federal officer removal statute.  *DeFiore v. SOC LLC*, 85 F.4th 546, 554 (9th Cir. 2023).  Defendants also moved in the district court for a stay of the remand order pending appeal.  But the district court denied the motion pursuant to *Nken v. Holder*, 556 U.S. 418 (2009) as opposed to *Coinbase, Inc. v. Bielski*, 599 U.S. 736 (2023).[3]  We affirm the district court's denial of Defendants' motion to stay.

## II.

This Court reviews a district court's stay order for abuse of discretion.  *In re PG&E Corp. Sec. Litig.*, 100 F.4th 1076, 1083 (9th Cir. 2024).

---

[3] The district court cited to *Golden Gate Rest. Ass'n. v. City and Cnty. of San Francisco*, 512 F.3d 1112, 1115 (9th Cir. 2008), for the four stay factors, but they are essentially identical to those the Supreme Court articulated in *Nken*.  *See Nken*, 556 U.S. at 434.

## III.

In *Coinbase*, the Supreme Court held that a district court is "require[d]" to enter an "automatic stay" pending appeal when a party exercises its statutory right under 9 U.S.C. § 16(a) ("The Federal Arbitration Act" or "FAA") to an interlocutory appeal of the denial of a motion to compel arbitration.  599 U.S. at 742–44.  In so ruling, the Court relied on *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56 (1982), which held that an "appeal, including an interlocutory appeal, 'divests the district court of its control over those aspects of the case involved in the appeal.'"  *Id.* at 740 (quoting *Griggs*, 459 U.S. at 58).[4]  Because the question on appeal in the FAA context "is whether the case belongs in arbitration or instead in the district court, the entire case is essentially 'involved in the appeal.'"  *Id.* at 741 (quoting *Griggs*, 459 U.S. at 58).  Accordingly, a stay of lower court proceedings pending appeal is required when a district court denies a motion to compel arbitration.  *Id.*

Defendants argue that the Supreme Court's reasoning in *Coinbase* should be extended to automatically stay litigation during the appeals of remand orders in the federal officer removal context.  Because the question on appeal is whether the case belongs in federal or state court, Defendants argue that the entire case is essentially involved in the appeal, and therefore an automatic stay of all proceedings is warranted

---

[4] *Coinbase* also turned in part on preserving for deserving defendants the unique benefits of arbitration as opposed to litigation, which we will discuss in more depth below.  *See* 599 U.S. at 743.

under *Coinbase*'s application of the *Griggs* principle.  We disagree.[5]

*Coinbase* read in conjunction with relevant Supreme Court precedent counsels in favor of limiting the *Coinbase* holding to the arbitration context.  Federalism concerns— namely the limited jurisdiction of federal courts and the need to respect the jurisdiction of state courts—distinguish federal officer removal from the arbitration context.  Moreover, the unique aspects of arbitration that automatic stays help to preserve are not at issue in the federal officer removal context.  Finally, automatic stays of federal officer removal appeals could lead to improper delay tactics and do harm to principles of judicial efficiency.  We therefore reaffirm that *Nken v. Holder* provides the proper standard for determining whether to issue a stay following the denial of a motion to compel arbitration.

## A.

The *Coinbase* majority clearly stated that "the sole question before [the] Court [was] whether a district court must stay its proceedings while the interlocutory appeal on arbitrability is ongoing."  599 U.S. at 740.  The Supreme Court did not receive briefing on the unique federalism issues implicated by the federal officer removal statute that differ in the arbitration context.  Instead, the issues and briefing presented concerned only stays in the context of arbitration and the unique aspects of the Federal Arbitration Act.  Nearly every paragraph of the *Coinbase* opinion

---

[5] Indeed, Defendants' broad reading of *Coinbase* and the *Griggs* principle would ostensibly sweep in other areas of litigation including, for instance, interlocutory appeals of remand orders based on 28 U.S.C. § 1443 (the civil rights removal statute), though *Coinbase* made no mention of other such areas.

specifically references "arbitrability" or the provisions of the FAA.

*Coinbase* does not abrogate *Nken v. Holder* beyond the arbitration context. While *Coinbase* represents a carveout to the normal discretionary stay powers in the arbitration context, the opinion does not overrule *Nken* nor render its precepts inoperable in other contexts. Here, we abide by the Supreme Court's instruction to "follow the case which directly controls" and "leav[e] to [the Supreme] Court the prerogative of overruling its own decisions." *Agostini v. Felton*, 521 U.S. 203, 237 (1997) (quoting *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989)).

**B.**

Crucially, requiring an automatic stay in the federal officer removal context would implicate federalism concerns not at issue where parties seek to compel arbitration. *Nken* emphasizes that a stay is an "intrusion into the ordinary processes of administration and judicial review" and accordingly "is not a matter of right, even if irreparable injury might otherwise result." 556 U.S. at 427 (quotations omitted). *Nken* further held that a stay is an exercise of judicial discretion, the propriety of which is dependent upon the circumstances of a particular case. *Id.* The ability for federal courts to weigh various factors before issuing the extraordinary remedy of a stay is vital for the efficient administration of justice, especially when the case involves another sovereign: here, the State of California. *See Cnty. of San Mateo v. Chevron Corp.*, 32 F.4th 733, 764 (9th Cir. 2022).

The four discretionary stay factors courts must weigh under *Nken* are "(1) whether the stay applicant has made a

strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." 556 U.S. at 434. The first two factors are the most critical. *Id.*

This discretion makes sense in the federal officer removal context because courts should have the power to weigh these important factors before granting stays that could infringe upon the rights of state courts. *See Younger v. Harris*, 401 U.S. 37, 43 (1971). Improper removals based on the federal officer removal statute deprive state courts of jurisdiction over cases that should rightfully be heard in their fora, in violation of comity principles. Automatic stays of litigation based on those improper removals pursuant to *Coinbase* would only exacerbate federal infringement on state courts' rights. *Nken*'s discretionary stay power allows federal courts to "scrupulously confine their own jurisdiction" and ensure they are giving "[d]ue regard for the rightful independence of state governments." *Cnty. of San Mateo*, 32 F.4th at 764 (quoting *Healy v. Ratta*, 292 U.S. 263, 270 (1934)).

Just as *Nken* affords federal courts discretion, so too are state courts empowered to craft case-specific solutions to balance the interests at stake when they receive remanded cases. For instance, a state court could decide to stay a remanded case if, in its opinion, it thinks the defendants who removed based on the federal officer removal statute do have a strong likelihood of success on appeal. *Coinbase*'s automatic stay rule applied to the federal officer removal context would deprive state courts of the power to make those types of determinations. Federal removal jurisprudence should allow state courts to "actuate federal

courts," which is what *Nken*'s discretionary stay factors allow for here.  *Healy*, 292 U.S. at 270.

Our federal and state court systems operate on the bedrock principle of comity, which includes "a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways."  *Younger,* 401 U.S. at 44.  The federal government "anxious though it may be to vindicate and protect federal rights and federal interest" must always "endeavor[] to do so in ways that will not unduly interfere with the legitimate activities of the States."  *Id*.  Here, an automatic stay pending appeal of a federal officer removal remand order would run afoul of the delicate balance of federalism.  The Supreme Court has repeated "time and time again that the normal thing to do when federal courts are asked to enjoin pending proceedings in state courts is not to issue such injunctions."  *Id.* at 45.  A stay pending appeal raises concerns for state court proceedings analogous to those at issue in *Younger*.  *See Nken*, 556 U.S. at 428 ("A stay pending appeal certainly has some functional overlap with an injunction.").  This is why *Nken* counsels that stays pending appeal are discretionary and today we reaffirm that they should remain so in the federal officer removal context.  *See id.* at 427.

### C.

That arbitration is a fundamentally different form of dispute resolution than litigation further demonstrates why *Coinbase*'s logic is inapposite in the federal officer removal context.  The FAA reflects a "liberal federal policy in favoring arbitration" when parties validly contract for it.  *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).  Thus, the Supreme Court has long

interpreted the FAA as an exceptional statute "designed to promote arbitration . . . 'notwithstanding any state substantive or procedural policies to the contrary.'" *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 345–46 (2011) (quoting *Moses H. Cone*, 460 U.S. at 24).

The federal officer removal statute, since its original enactment near the end of the War of 1812, has undergone a series of amendments. *Watson v. Philip Morris Cos.*, 551 U.S. 142, 147–48 (2007). But its "basic purpose" remains "to protect the Federal Government from the interference with its operations that would ensue" if federal officers and agents could be subject to trial and liability in potentially hostile state courts based on actions "within the scope of their authority." *DeFiore*, 85 F.4th at 555 (cleaned up). The statute thus "vindicates . . . the interests of [the federal] government" in "preserving its own existence." *Id.* at 553 (cleaned up).

Congress's intent to promote arbitration via the FAA "notwithstanding any state substantive or procedural policies to the contrary," *Moses H. Cone*, 460 U.S. at 24, stands in contrast to the long-held principle that "removal statutes should be construed narrowly in favor of remand to protect the jurisdiction of state courts." *Harris v. Bankers Life and Cas. Co.*, 425 F.3d 689, 698 (9th Cir. 2005). While it is true that the federal officer removal statue should be "liberally construed," *Watson*, 551 U.S. at 147, that guidance must be understood in the broader context of the United States' dual sovereign court system, where federal courts of limited jurisdiction must "scrupulously confine their own jurisdiction to the precise limits which the statute [authorizing removal jurisdiction] has defined." *Healy*, 292 U.S. at 270; *see DeFiore*, 85 F.4th at 553–54 (clarifying that while the language of the federal officer removal statue

is broad and must be liberally construed, it "is not limitless" (quoting *Watson*, 551 U.S. at 147)).

*Coinbase* highlights some of the fundamental differences between arbitration and litigation, 599 U.S. at 743, which illustrate both that *Coinbase* is inapposite and that an automatic stay rule is not warranted in the federal officer removal context.  The reason why parties may prefer to arbitrate as opposed to litigate claims is due to "efficiency, less expense, less intrusive discovery, and the like." *Id.*  The continuation of proceedings in the district court when stays are denied renders those features "irretrievably lost." *Id.*  These unique features of arbitration also help explain Coinbase's contention that a denial of a motion to compel arbitration makes it so "the entire case is essentially 'involved in the appeal,'" necessitating an automatic stay of litigation pending appeals of denials of arbitrability. *Id.* at 741 (quoting *Griggs*, 459 U.S. at 58).  Absent an automatic stay in the arbitration context, the benefits of arbitration Congress aimed to effectuate via the FAA could be irreparably lost with each day a party is wrongfully subjected to pretrial litigation and discovery. *Id.* at 743.

These fundamental differences between arbitration and litigation do not exist as between litigation in state versus federal courts.  Though state and federal courts may operate in slightly different ways, each provide forums for litigation with roughly similar levels of efficiency, expense, and comprehensive discovery mechanisms.  Having to continue litigation in state court for a brief period pending appeal does not cause defendants to "irretrievably lo[se]" any benefits of

the type lost when being wrongfully forced to arbitrate. **⁶** *See id.* at 743.

It also bears noting that applying *Nken*, and not *Coinbase*, to appeals of federal officer removal remand orders such as the one here squares with *Griggs* because the question on appeal here is essentially a narrow venue question of whether the case belongs in state or federal court. This question differs from questions remaining before the state court (assuming the case gets remanded) such as whether the claims have merit, whether the parties are entitled to the discovery they seek, and so on. Proceedings on those questions would not interfere with the appellate court's review of the remand order, nor risk inconsistent

---

[6] Indeed, the Supreme Court has historically understood the federal officer removal statute as intending to shield federal officers from biased *trials* in state court and accompanying judgments. *See Watson*, 551 U.S. at 150. The long line of precedent stretching back over a century interpreting the federal officer removal statute does not discuss the right to avoid pretrial discovery in state court but instead focuses on providing a federal forum for trials and final judgments for federal officers. *Id.* at 150–51. In one of the seminal cases first upholding the constitutionality of an early iteration of the statue, the Supreme Court said the history of the statute was "well known" and that "[i]t gives the right to remove at any time before trial." *Tennessee v. Davis*, 100 U.S. 257, 268 (1879) (emphasis added). The main concern was a biased state court judge presiding over an unfair trial in front of a hostile local jury reflecting "local prejudice" against unpopular federal laws or federal officials. *See Watson*, 551 U.S. at 150 (quoting *Maryland v. Soper*, 270 U.S. 9, 32 (1926)). Over time, the focus on shielding federal officers from biased trials evolved to include giving "officers a federal forum in which to litigate the merits of immunity defenses." *Jefferson Cnty. v. Acker*, 527 U.S. 423, 447 (1999) (Scalia, J., concurring in part and dissenting in part). But, having to go through some early stages of litigation in state court does not deprive defendants wrongly remanded from later having their immunity defenses decided in federal court if they are ultimately permitted to remove.

judgments.   Those proceedings, in other words, do not implicate the *Griggs* principle, which addresses the "danger a district court and a court of appeals would be simultaneously analyzing the same judgment."  459 U.S. at 59.

In sum, permitting early stage litigation in state court would not preclude a defendant from returning to federal court post-appeal.  If removed, the defendant could then have its federal immunity defenses adjudicated and, if necessary, a trial held in federal court.  *See Watson*, 551 U.S. at 150–51.  This system works, and we see no valid reason to alter it.[7]

## D.

Finally, adopting an automatic stay rule in the federal officer context might encourage gamesmanship by defendants that would frustrate principles of judicial

---

[7] Analogies to other contexts involving interlocutory appeals help to further illustrate the distinct concerns raised in the federal officer removal context.  Appeals from denials of qualified immunity, absolute immunity, sovereign immunity, and immunity under the Double Jeopardy Clause all immediately divest the district court of jurisdiction over the entire case against defendants because these immunities represent an entitlement to avoid litigation altogether.  *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).  That entitlement extends even to pretrial discovery.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) ("Until this threshold immunity question is resolved, discovery should not be allowed.").   Courts have not understood the federal officer removal statute, by contrast, to shield defendants from pre-trial litigation *in toto*.  *See Watson*, 551 U.S. at 150 (quoting *Soper*, 270 U.S. at 32); *Tennessee*, 100 U.S. at 268.  The statute instead aims to guarantee a federal *forum* for adjudication of federal immunity defenses and trial on the merits.  *See Jefferson Cnty.* 527 U.S. at 447.  Allowing some pretrial litigation to continue on in state court pending federal interlocutory appeal of the remand order does not ultimately frustrate this purpose.

economy. Any defendant seeking to delay discovery could craft an argument for federal officer removal then appeal a district court's remand order. This could cause plaintiffs languishing under mandatory stays to suffer harms in the form of lost evidence, depleted funding, and diminished patience.

*Coinbase* instructs that courts have tools to avoid such gamesmanship in the arbitration context. But these proposed solutions do not support judicial economy in the federal officer removal context. First, the Supreme Court provides that district courts may "certify that an interlocutory appeal is frivolous." *Coinbase*, 599 U.S. at 754 (citing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 629 (2009)). While district courts have the power to certify the question of whether an interlocutory appeal is frivolous, they seldom seem to use it because they have the discretion to simply assess the *Nken* factors before deciding whether to grant a stay. Sanctions provide another option to punish frivolous appeals, *see* Fed. R. App. P. 38; *Arthur Andersen*, 556 U.S. at 629, but they are cumbersome for courts to impose and rarely used. Accordingly, the discretionary stay system already in place is superior for the purposes of judicial economy.

## IV.

The district court did not abuse its discretion in applying the *Nken* factors to deny Defendants' motion to stay the litigation pending appeal.[8] The district court found that

---

[8] The Ninth Circuit's application of the *Nken* factors operates on a "sliding scale," such that "if there is a probability or strong likelihood of success on the merits, a relatively low standard of hardship is sufficient."

Defendants did not make a strong showing that they were likely to succeed on the merits in large part because Plaintiff's valid and comprehensive disclaimer eviscerated all basis for federal officer removal jurisdiction. A court of appeals assessing the likelihood of success on the merits for the purposes of a stay pending appeal must take care "not to prejudge the merits of the appeal" and need not "address the merits in detail." *Doe #1 v. Trump*, 957 F.3d 1050, 1062 (9th Cir. 2020).

Here, Plaintiff's disclaimer appears to sever all federal involvement from Plaintiff's state law public nuisance claim so as to make it impossible for Defendants to satisfy the elements of the federal officer removal statute—that the entity seeking removal is (a) a person within the meaning of the statute; (b) there is a causal nexus between its actions, taken pursuant to a federal officer's directions, and plaintiff's claims; and (c) it can assert a colorable federal defense. *Goncalves ex rel. Goncalves v. Rady Child.'s Hosp. San Diego*, 865 F.3d 1237, 1244 (9th Cir. 2017) (internal citations omitted).[9] Defendants have not addressed any hardship that would be cognizable under *Nken* nor injury to others that would occur in the absence of a stay. Finally, the district court agreed with Plaintiff that the public interest favored continuing with the litigation to abate an ongoing public health crisis to which Defendants are alleged to have contributed. Defendants did not, at this stage in the

---

*Golden Gate*, 512 F.3d at 1116–19 (internal quotations and citations omitted). By contrast, "if the balance of hardships tips sharply in favor of the party seeking the stay, a relatively low standard of likelihood of success on the merits is sufficient." *Id.* at 1119 (cleaned up).

[9] Our forthcoming opinion will discuss the merits of Defendants' federal officer removal arguments and the viability of Plaintiff's disclaimer in greater depth.

litigation, attempt to counter Plaintiffs' arguments based on *Nken*.  Accordingly, the district court did not abuse its discretion in denying Defendants' motion for a stay pending appeal. *Nken*, 556 U.S. at 434; *In re PG&E Corp.*, 100 F.4th at 1083.

\*                        \*                        \*

Defendants asked this Court to rule first and as quickly as possible on their request to stay the lower court proceedings pending review of their federal officer removal arguments.  Having done so, we affirm that *Nken*, and not *Coinbase*, provides the proper standard for assessing Defendants' request for a stay of the state court proceedings. "[T]he Supreme Court's decision in *Coinbase* does not constitute a general withdrawal of the discretion that courts have exercised for centuries—rather, it merely represents a carve-out in favor of arbitration." *City of Martinsville, Virginia v. Express Scripts, Inc.*, 128 F.4th 265, 275 (4th Cir. 2025) (Wynn, J., dissenting).  We agree.  Accordingly, we affirm the district court's denial of the motion to stay.

**AFFIRMED.**